Kirsten Zittlau (CA Bar No. 220809)
Zittlau Law APC
P.O. Box 161139
San Diego, California 92176
Tel: (619) 252-6888
zittlaulaw@gmail.com

Attorneys for Petitioner

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Darwin Jerardo CHUMUX AYALA,

Petitioner-Plaintiff,

v.

ACTING WARDEN, Adelanto ICE Processing Center; U.S. Department of Homeland Security; David VENTURELLA, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; Sirce OWEN, Acting Director for Executive Office for Immigration Review; Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd BLANCHE, Attorney General of the United States;

Respondents-Defendants.

Case No.: 5:26-cv-6310

**PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes; Request for Declaratory and Injunctive Relief

Agency File No.: A 203 614 276

Petitioner Darwin Jerardo Chumux Ayala petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241 to remedy Respondents detaining him unlawfully, and states as follows:

## INTRODUCTION

1. Petitioner, Darwin Jerardo Chumux Ayala ("Mr. Chumux Ayala" or "Petitioner"), is a Guatemalan man detained at the Adelanto ICE Processing Center in Adelanto, California. Petitioner, by and through his undersigned counsel, hereby files this petition for writ of habeas corpus to compel his immediate release from immigration detention where he has been held by the U.S. Department of Homeland Security (DHS) since being unlawfully re-detained on October 21, 2026.

2. The Petitioner was detained without a warrant and without first being provided a due process hearing to determine whether his incarceration is justified. Petitioner was previously released on approximately May 2, 2019 by DHS on conditional parole pursuant to INA section 236 (8 U.S.C. § 1226) after a determination that he was neither a flight risk nor a danger to the community.

3. Absent review in this Court, no other neutral adjudicator will examine Petitioner's plight: Respondents will continue to detain him in violation of the law essentially indefinitely. Petitioner thus urges this Court to review the lawfulness of his detention; declare that his detention is unlawful; and order his immediate release.

4. The Due Process clause of the Fifth Amendment, as well as statutory and regulatory authorities, require the government to provide noncitizens with notice and a hearing prior to re-detention. Statutory and regulatory authorities further require the Petitioner to be arrested with a warrant, with the only exception being specific and

individualized evidence of his likelihood of escape, which does not exist here. Here, Petitioner's rights were violated and continue to be each day he is detained.

**STATEMENT OF FACTS**

5. Mr. Chumux Ayala came to the United States as a minor with his mother and siblings. They entered the United States without inspection on or about May 1, 2019. He and his family shortly thereafter made contact with Border Patrol officials.

6. Mr. Chumux Ayala and his mother and siblings were briefly detained by Border Patrol but were released on their own recognizance on approximately May 2, 2019. He and his mother and siblings were issued an Order of Release on Own Recognizance. See **Exhibit 1**.

7. Mr. Chumux Ayala has complied with the conditions of release and the laws of the United States. Mr. Chumux Ayala went with his mother to ICE on the date specified in the Order of Release. ICE informed his mother that only she had to report from there on out, and not her minor children (including Mr. Chumux Ayala).

8. To the best of their knowledge, ICE never served Mr. Chumux Ayala or his mother with a Notice to Appear in immigration court.

9. On October 21, 2026, Mr. Chumux Ayala was pulled over and arrested by ICE while on his way to work.

10. ICE did not shown any warrant or notice to appear in immigration court to Mr. Chumux Ayala at the time of his arrest. Mr. Chumux Ayala was also not provided with any pre-deprivation hearing or other form of due process prior to his arrest.

11. Mr. Chumux Ayala has a valid California driver's license. He has gone to school and/or worked in the U.S. for over 7 years. He has also developed ties to his community. Mr. Chumux Ayala has no criminal record.

12. In short, nothing has changed – let alone materially changed – since he was released on his own recognizance seven years ago in May of 2019 such that his current detention is justified.

## JURISDICTION

13. This Court has jurisdiction under 28 U.S.C. § 2241; Art. I, § 9, cl. 2 of the United States Constitution; and 28 U.S.C. § 1331, as Petitioner is presently in Respondents' custody under the United States' color of authority, and such custody violates the United States' Constitution, laws, or treaties. Its jurisdiction is not limited by a petitioner's nationality, status as an immigrant, or any other classification. *See Boumediene v. Bush*, 553 U.S. 723, 747 (2008). This Court may grant relief under U.S. CONST. art. I, § 9, cl. 2; U.S. CONST. amends. V and VIII; 28 U.S.C. §§ 1361 (mandamus), 1651 (All Writs Act), 2241 (habeas corpus).

14. Specifically, this Court has jurisdiction under 28 U.S.C. § 2241 to review Petitioner's re-detention without being provided an individualized bail hearing prior to his re-detention and before a neutral adjudicator under § 1226(a), as well as Petitioner's challenge to being subjected to mandatory detention under Section 1225(b)(2). Federal district courts possess broad authority to issue writs of habeas corpus when a person is held "in custody in violation of the Constitution or laws or treaties of the United States" (28 U.S.C. § 2241(c)(3)), and this authority extends to immigration detention challenges that survived the REAL ID Act's jurisdictional restrictions.

15. Because Petitioner seeks the traditional habeas remedy of release from allegedly unlawful detention rather than additional administrative review of his underlying claims, his petition presents precisely the type of threshold legality-of-detention question that § 2241 was designed to address. *See INS v. St. Cyr*, 533 U.S. 289, 301 (2001); *see also Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh*, 638 F.3d at 1211-12)). And no court has ruled on the legality of Petitioner's detention.

**REQUIREMENTS OF 28 U.S.C. § 2243**

16. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within *three days* unless for good cause additional time, *not exceeding twenty days*, is allowed." *Id.* (emphasis added).

17. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

18. Habeas corpus must remain a swift remedy. Importantly, "the statute itself directs courts to give petitions for habeas corpus 'special, preferential consideration to insure expeditious hearing and determination.'" *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (internal citations omitted). The Ninth Circuit warned against any action creating the perception "that courts are more concerned with efficient trial management than with the vindication of constitutional rights." *Id.*

## VENUE

19. Venue is properly before this Court pursuant to 28 U.S.C. § 1391(e) because the Respondents are employees or officers of the United States, acting in their official capacity; because a substantial part of the events or omissions giving rise to the claim occur in San Bernardino County in the Central District of California where Petitioner is currently detained, and because there is no real property involved in this action.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20. In habeas claims, exhaustion of administrative remedies is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (*quoting Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted)).

21. Here, exhausting administrative remedies would be futile, administrative remedies are inadequate and irreparable injury will result.

22. Pursuant to the Board's precedential decision in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), immigration judges are not taking jurisdiction over any custody redetermination hearing for noncitizens like the Petitioner.

23. Exhausting administrative remedies by requesting release from ICE is also futile because Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). As such, no request to release Petitioner from custody would be considered by ICE.

24.Moreover, statutory exhaustion requirements do not apply to Petitioner's claim of unlawful custody in violation of his due process rights, and there are no administrative remedies that he needs to exhaust. *See Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1058 (9th Cir. 1995) (finding exhaustion to be a "futile exercise because the agency does not have jurisdiction to review" constitutional claims); *In re Indefinite Det. Cases*, 82 F. Supp. 2d 1098, 1099 (C.D. Cal. 2000) (same).

25. Every day that Petitioner remains detained causes him harm that cannot be repaired. His continued detention puts his physical and mental health at greater risk, further warranting a finding of irreparable harm and the waiver of the prudential exhaustion requirement. The Court must consider this in its irreparable harm analysis of the effects on Petitioner as his detention continues. *See De Paz Sales v. Barr*, No. 19-CV-07221-KAW, 2020 WL 353465, at *4 (N.D. Cal. Jan. 21, 2020).

**PARTIES**

26.Petitioner Darwin Jerardo Chumux Ayala is a Guatemalan man who has lived in the United States since May 2, 2019 when he entered the U.S. without inspection and was released on his own recognizance. Despite satisfying the conditions of his parole and generally obeying the law, Mr. Chumux Ayala was re-detained on October 21, 2026. Petitioner is currently in Respondents' legal and physical custody at the Adelanto ICE Processing Center in Adelanto, California.

27. Respondent David VENTURELLA is the Acting Director of ICE and is named in his official capacity. Among other things, ICE is responsible for the administration and enforcement of the immigration laws, including the removal of noncitizens. In his official capacity as head of ICE, he is the legal custodian of Petitioner.

28.Respondent Sirce OWEN is the Acting Director of EOIR and has ultimate responsibility for overseeing the operation of the immigration courts and the Board of Immigration Appeals, including bond hearings. Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings. She is sued in her official capacity.

29.Respondent Markwayne MULLIN is the Secretary of the DHS and is named in his official capacity. DHS is the federal agency encompassing ICE, which is responsible for the administration and enforcement of the INA and all other laws relating to the immigration of noncitizens. In his capacity as Secretary, Respondent Mullin has responsibility for the administration and enforcement of the immigration and naturalization laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat. 2135 (Nov. 25, 2002); *see also* 8 U.S.C. § 1103(a). Respondent Mullin is the ultimate legal custodian of Petitioner.

30.Respondent Todd BLANCHE is the Attorney General of the United States and the most senior official in the U.S. Department of Justice (DOJ) and is named in his official capacity. He has the authority to interpret the immigration laws and adjudicate removal cases. The Attorney General delegates this responsibility to the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA.

31. Respondent ACTING WARDEN is the Warden of the Adelanto Detention Center, where Petitioner is being held. Respondent Acting Warden oversees the day-to-day operations of the Adelanto Detention Center and acts at the Direction of Respondents

Venturella and Mullin. Respondent Acting Warden is a custodian of Petitioner and is named in their official capacity.

## LEGAL FRAMEWORK AND ANALYSIS

### Due Process

32. The Due Process clause of the Constitution as well as precedential decisions narrow DHS's authority to unilaterally revoke any noncitizen's immigration bond or conditional parole and re-arrest the noncitizen at any time, 8 U.S.C. § 1226(b); 8 C.F.R. § 236.1(c)(9).

33. ICE can release a noncitizen from custody after the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

34.The Board of Immigration Appeals has identified limits to DHS's authority to re-detain noncitizens: "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance," a position adopted by the Ninth Circuit. *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); *see also Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021)("Thus, absent changed circumstances … ICE cannot re-detain Panosyan.").

35. The government has further clarified in litigation that the showing of changed circumstances applies "both where the prior bond determination was made by an

immigration judge *and* where the previous release decision was made by a DHS officer." *Saravia v. Barr*, 280 F. Supp. 3d at 1197 (emphasis added).

36. Further, DHS has in practice limited its authority and "generally only re-arrests [noncitizens] pursuant to § 1226(b) after a *material* change in circumstances," not just any changed circumstances. *Id.* (quoting Defs.' Second Supp. Br. at 1, Dkt. No. 90) (emphasis added).

37. The Fifth Amendment also limits the government's authority to re-detain a noncitizen previously released, even when the government believes it has good cause to do so.

38. The government cannot deprive any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. Due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

39. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

40. A continued liberty interest also exists where an individual was detained and is subsequently released, even if conditionally released and even when an initial decision to detain or release the individual is discretionary. *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972). "[S]ubject to the conditions of his parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* at 482. The parolee relies "on at least an implicit promise

that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The Court explained that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others." *Id.* In turn, "[b]y whatever name, the liberty is valuable and must be seen within the protection of the [Fifth] Amendment." *Morrissey*, 408 U.S. at 482; *see also Young v. Harper*, 520 U.S. 143, 152 (1997) (holding that individuals placed in a pre-parole program created to reduce prison overcrowding have a protected liberty interest requiring pre-deprivation process); *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973) (holding that individuals released on felony probation have a protected liberty interest requiring pre-deprivation process).

41. "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). "Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond."). *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Even where "a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest." *Id.* at 970 (N.D. Cal. 2019); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022).

42. The protected liberty interest is even more substantial when balancing the nonpunitive purpose of immigration detention against the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families

as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

43. "[R]elease from ICE custody constitute[s] an 'implied promise' that [the noncitizen's] liberty would not be revoked unless she 'fail[s] to live up to the conditions of her release.' The regulatory framework makes clear that those conditions [a]re that [the noncitizen] remain[s] neither a danger to the community nor a flight risk. *Pinchi v. Noem*, ––– F. Supp. 3d ––––, ––––, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *8 (N.D. Cal. July 24, 2025) (citing *Morrissey*, 408 U.S. at 482).

44. "Adequate, or due, process depends upon the nature of the interest affected. The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards the [government] must provide to satisfy due process." *Haygood v. Younger*, 769 F.2d 1350, 1355-56 (9th Cir. 1985) (en banc) (citing *Morrissey*, 408 U.S. at 481-82). This Court must "balance [Petitioner's] liberty interest against the [government's] interest in the efficient administration of" its immigration laws in order to determine what process he is owed to ensure that ICE does not unconstitutionally deprive him of his liberty. *Id.* at 1357.

45. The three-factor *Mathews* test (adopted by the Court of Appeals for the Ninth Circuit, *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022)), helps the Court assess adequate safeguards: "[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally the government's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

46. The Due Process Clause typically requires a hearing of some sort before the government may deprive a person of liberty. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (*see also United States v. Raya-Vaca*, 771 F.3d 1195, 1204 (9th Cir. 2014) ("Due process always requires, at a minimum, notice and an opportunity to respond."). Post-deprivation remedies may satisfy the requirements of due process only in a "special case" where they are "the only remedies the State could be expected to provide" and where "one of the variables in the *Mathews* equation—the value of post deprivation safeguards—is negligible in preventing the kind of deprivation at issue" such that "the State cannot be required constitutionally to do the impossible by providing post deprivation process." *Zinermon*, 494 U.S. at 985.

47. Where the petitioner "has not received any bond or custody … hearing, the risk of an erroneous deprivation [of liberty] is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi v. Noem*, ––– F. Supp. 3d ––––, ––––, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *8 (N.D. Cal. July 24, 2025) (citation omitted). A pre-detention hearing significantly decreases that risk because the government has to prove to a neutral adjudicator by clear and convincing evidence that circumstances have materially changed to justify re-detention, and a hearing is likelier to produce accurate determinations regarding factual disputes, such as whether a certain occurrence constitutes a "changed circumstance." *See Chalkboard, Inc. v. Brandt*, 902 F.2d 1375, 1381 (9th Cir.1989) (when "delicate judgments depending on credibility of witnesses and assessment of

conditions not subject to measurement" are at issue, the "risk of error is considerable when just determinations are made after hearing only one side").

48. Further, the risk of an erroneous deprivation of liberty under *Mathews* can be decreased where a neutral decisionmaker, rather than ICE alone, makes custody determinations. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1091-92 (9th Cir. 2011); *see also Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006) ("A neutral judge is one of the most basic due process protections.")

49. Finally, immigration detention is civil (as opposed to criminal), and its primary purpose is to ensure a noncitizen's appearance during removal proceedings and protect against danger to the community; it cannot be punitive. *Zadvydas v. Davis*, 533 U.S. 678, 690, 697 (2001). Due process thus also requires consideration of alternatives to detention at any custody redetermination hearing that may occur, and where alternatives to detention that could mitigate risk of flight exist, detention is not warranted. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979).

**Statutory and Regulatory Authority Regarding Arrests**

50. In Rodriguez Vazquez v. Bostock, Case No. 25-6842 (9th Cir. July 30, 2026), the Ninth Circuit clarified and affirmed that noncitizens apprehended within the U.S. are subject to detention pursuant to 8 U.S.C. § 1226.

51. 8 U.S.C. § 1226 provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Per 8 C.F.R. § 236.1(b)(1), a

noncitizen may only be arrested and detained pursuant to the Form I-200 Administrative Warrant if it is issued by an authorized official.

52. "At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter." See 8 C.F.R. § 236.1(b)(1).

53. Immigration officers are authorized to make warrantless arrests in limited circumstances. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation … regulating the admission, exclusion, expulsion, or removal of aliens," or when an officer has reason to believe (i) the noncitizen is in the United States in violation of such laws or regulations and (ii) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); see also 8 U.S.C. § 1357(a)(4)-(5).

54. The regulations at 8 C.F.R. § 287.8(c)(2)(ii) provide that, "A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."

55. As "[i]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)[,]" unless an exception applies, "a noncitizen may not be arrested and detained under section 1226(a)" without one. *Sergio P. v. Bondi*, No. 26-CV-1538 (ECT/DTS), 2026 WL 497290, at *2 (D. Minn. Feb. 23,

2026) (cleaned up); see also *Djiwaje v. Bondi*, No. 2:26-CV-00344-RFB-MDC, 2026 WL 926753, at *4 (D. Nev. Apr. 6, 2026).

56. Unless an exception applies, if a noncitizen is arrested without a warrant and there has been a failure to follow the procedures authorizing detention under § 1226(a), the detention is "divorced from a finding of probable cause," and release is warranted. See *Romero-Perez v. Blanche*, No. 2:26-CV-01708-RFB-BNW, 2026 WL 1724752, at *3 (D. Nev. June 15, 2026).

57. In *Vasquez Perdomo v. Mullin*, __ F. Supp. 3d __, No. 2:25-CV-05605-MEMF-SP, 2026 WL 2751388 (C.D. Cal. Sept. 2, 2026), a judge in this District granted a preliminary injunction requiring a "***prearrest*** individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained" in warrant-less arrests. (emphasis added).

## FIRST CLAIM FOR RELIEF

### Due Process
### U.S. Const. Amend. V

58. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

59. Petitioner's re-detention without materially changed circumstances and/or a pre-deprivation hearing violates his right to due process under the Fifth Amendment.

60. The Government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

61. Petitioner has a vested liberty interest in his conditional release. Due Process does not permit the government to strip him of that liberty without a hearing before this Court. *See Morrissey v. Brewer*, 408 U.S. 471, 487-88 (1972).

62. Petitioner's re-arrest without a hearing violated the Constitution both substantively, because Respondents have no valid interest in detaining him since circumstances have not changed, and procedurally, because he was not provided with a pre-detention hearing or any other form of due process prior to his re-detention.

## **SECOND CLAIM FOR RELIEF**

### **Statutory Violations – Unlawful Arrest Without a Warrant 8 U.S.C. §§ 1357(a) and 1226(a)**

63. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

64. As discussed above, 8 U.S.C. § 1226 provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

65. 8 U.S.C. § 1357(a) sets forth when a warrantless arrest is permitted. None of the subsections of Section 1357(a) apply. Petitioner was not likely to escape, he was not entering the U.S. nor was the Petitioner committing a crime or does he have any criminal record.

66. As such, the Petitioner's arrest violates 8 U.S.C. § 1226(a) and 8 U.S.C. § 1357(a), and Petitioner should be immediately released from custody.

## **PRAYER FOR RELIEF**

WHEREFORE, the Petitioner prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Issue the writ of habeas corpus and order Respondents to show cause, within three days of Petitioner's filing this petition, why the relief he seeks should not be granted; and set a hearing on this matter within five days of Respondents' return on the order to show cause (*see* 28 U.S.C. § 2243);

(3) Enjoin Respondents from transferring Petitioner outside the jurisdiction of the Central District of California pending the resolution of this case;

(4) Issue a Writ of Habeas Corpus requiring Respondents to release Petitioner on the conditions of his prior parole, including returning to him all his possessions and identification documents;

(5) Award reasonable costs and attorney fees under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law;

(6) Grant such further relief as the Court deems just and proper.

Dated: October 25, 2026

Respectfully submitted,

By: /s/ Kirsten Zittlau
Kirsten Zittlau
Attorneys for Petitioner

## VERIFICATION PURSUANT TO 28 U.S.C. 2242

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition and reviewed Petitioner's immigration file. Based on said review and those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on this October 25, 2026, in San Diego, California.

*/s/ Kirsten Zittlau*
Kirsten Zittlau
Attorney for Petitioner